IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of financialright claims GmbH<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | Civil Action No. 23-1481-CFC |

Bindu A. Palapura and Jacqueline A. Rogers, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Jeffrey A. Rosenthal, Christopher P. Moore, and Lina Bensman, CLEARY GOTTLIEB STEEN & HAMILTON LLP, New York, NY

*Counsel for Petitioner*

Elena C. Norman, Anne Shea Gaza, and Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Derek T. Ho, Travis G. Edwards, and Dustin G. Graber, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, DC; Edward P. Boyle and Allison M. Cunneen, VENABLE LLP, New York, NY

*Counsel for Respondents*

**MEMORANDUM OPINION**

November 18, 2024
Wilmington, Delaware

_____
COLM F. CONNOLLY
CHIEF JUDGE

financialright claims GmbH (FRC) initiated this action with the filing of an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. D.I. 2. Section 1782 provides that "upon the application of any interested person" a district court "may order" "a person [who] resides or is found" in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). A "person" for § 1782 purposes "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

FRC seeks by its application an order granting it permission to obtain discovery from three Delaware LLCs "for use in connection with the foreign proceeding *financialright claims GmbH v. Hausfeld Rechtsanwälte LLP*, Case No. 11162-22/ST/sg, brought by FRC against Hausfeld Rechtsanwälte, LLP [(Hausfeld)] in the Berlin Regional Court" in Germany (the Hausfeld Litigation). D.I. 48 at 1. The three LLCs are: Burford Capital LLC (Burford Capital), Burford German Funding LLC (Burford Germany), and German Litigation Solutions LLC (GLS). I will refer to them collectively as either Burford or the Burford Entities.

Pending before me in addition to FRC's application is a motion filed by Burford to compel arbitration and stay this action pending arbitration (D.I. 20).

I.

The circumstances that ultimately gave rise to the German lawsuit for which FRC seeks discovery by its § 1782 application trace their roots to truck sales in Europe in the late 1990s. In 2016, the European Commission announced that it had imposed approximately three billion dollars in fines against certain manufacturers that had participated in a cartel to fix the price of medium-duty and heavy-duty trucks in Europe between 1997 and 2011. D.I. 5 ¶ 4; *Antitrust: Commission fines truck producers € 2.93 billion for participating in a cartel*, Eur. Comm'n (July 18, 2016), https://ec.europa.eu/commission/presscorner/detail/el/ip_16_2582 [https://perma.cc/HT7R-RUBL]. In the wake of this announcement, FRC began a campaign to acquire the legal claims of consumers who had purchased trucks at inflated prices from the manufacturers that had engaged in the unlawful price fixing.

To fund the acquisition and prosecution of these claims, FRC turned to Burford Capital. Negotiations between Sven Bode of FRC and Bernd Pill of Burford Capital resulted in a so-called Capital Provision Agreement (CPA). D.I. 37 ¶¶ 3, 7. According to Bode, "[a]s these negotiations progressed, Burford [Capital] informed [him] that FRC's counterparty to the CPA would be an entity

named Burford German Funding LLC [(i.e., Burford Germany)]." D.I. 37 ¶ 4. And, indeed, the only parties to the CPA, which was signed in April 2017, are FRC and Burford Germany. D.I. 4 at 4; D.I. 5-1 at 63.

Under the CPA, Burford Germany agreed to fund FRC's acquisition and prosecution of truckers' claims against certain manufacturers in exchange for a share of any damages garnered from FRC's assertion of those claims. D.I. 4 at 4; D.I. 5-1 at 64–66. Two paragraphs of the CPA bear on the matters before me.

First, paragraph 5.3(a)(ii) requires FRC to "retain and remunerate" the German law firm of Hausfeld Rechtsanwälte, LLP (Hausfeld) "to prosecute [FRC's claims] vigorously in a commercially reasonable manner in order to bring about the reasonable monetization of" FRC's trucker claims. D.I. 5-1 at 69. Second, paragraph 27(a) of the CPA, referred to by the parties before me as "the Arbitration Agreement," provides:

> Any dispute, controversy or claim arising out of or in connection with this Agreement, including any question regarding its formation, existence, validity, interpretation, performance, breach or termination . . . shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration under the Arbitration Rules of The London Court of International Arbitration (the "*LCIA*"), which rules are deemed to be incorporated by reference into this Section. Any attempt by [FRC] to seek relief or remedies in any other forum shall constitute a breach of this Agreement and entitle [Burford Germany] to damages, equitable relief and full indemnification against all costs and expenses incurred in connection therewith.

3

> [FRC] shall be obliged to post security for costs as directed by the arbitral tribunal ("***Tribunal***").

D.I. 5-1 at 86–87 (emphasis in the original).

Consistent with paragraph 5.3(a)(ii), FRC retained Hausfeld in 2017 to litigate the claims it had acquired from truckers. D.I. 37 ¶ 7. FRC's engagement letter with Hausfeld provides in relevant part that FRC shall compensate Hausfeld for its services in the form of a "fee, which is calculated on the basis of time spent and hourly rates." D.I. 37-1 at 10. The engagement letter also states that "the exclusive place of jurisdiction for all claims in connection with this [retainer] agreement is Berlin." D.I. 37-1 at 12. FRC maintains—and Burford does not dispute—that this latter sentence requires FRC to litigate in German courts in Berlin any disputes with Hausfeld relating to Hausfeld's representation of FRC with respect to FRC's trucker claims. D.I. 36 at 8–9; D.I. 37 ¶ 10; D.I. 38 at 3–4.

Fast forward to late 2022. FRC alleges in its briefing that Bode learned at that time that Burford Germany "was part-owned by GLS, an entity owned by Hausfeld partners, including one of FRC's lead lawyers [retained to litigate FRC's trucker claims]." D.I. 36 at 9; *see also* D.I. 5 ¶¶ 6–7; D.I. 5-1 at 28. According to FRC, this ownership structure allowed Hausfeld lawyers who worked on FRC's trucker claims to share in recoveries gained from the assertion of those claims in violation of both the terms of FRC's engagement letter with Hausfeld and German law's prohibition of attorney contingency fees.

4

On December 29, 2023, FRC filed the Hausfeld Litigation in the Berlin Regional Court. FRC and Hausfeld are the only parties in that case. FRC alleges in the Hausfeld Litigation that by virtue of ownership interests in GLS, Hausfeld partners shared in Burford Germany's recoveries from FRC's trucker claims in violation of Germany's prohibition of attorney contingency fee compensation. D.I. 5-1 at 30. FRC also alleges that it is entitled to restitution of any proceeds Hausfeld and its partners obtained or will obtain in the future from FRC's trucker claim recoveries. D.I. 5-1 at 30.

The same day it filed the Hausfeld Litigation, FRC filed its § 1782 application in this Court. D.I. 2. The application seeks an order giving it leave to subpoena document productions and deposition testimony from the Burford Entities on various topics, including the CPA. *See* D.I. 28-1; D.I. 28-2; D.I. 28-3; D.I. 28-4; D.I. 28-5; D.I. 28-6.

On January 30, 2024, FRC moved to stay the action "to allow FRC and [Burford] to continue discussing a potential resolution of this matter." D.I. 12 at 1. Later that day, I granted FRC's motion and stayed the action "until FRC notifies the Court that discussions of a potential resolution of [its] [a]pplication have been unsuccessful." D.I. 13.

On May 31, 2024, FRC "notifie[d] the Court that the stay imposed by the Court's January 30, 2024 Order is hereby ended, as discussions of a potential

5

resolution of FRC's application pursuant to 28 U.S.C. § 1782 have been unsuccessful." D.I. 19 at 1 (internal quotation marks removed). Within hours of that notification, Burford filed its motion to compel arbitration. D.I. 20. The parties completed their briefing on Burford's motion on July 26, 2024. D.I. 42. I heard oral argument on the motion on November 1, 2024.

## II.

Burford purports to bring its motion pursuant to the Federal Arbitration Act (the FAA or Act), codified at 9 U.S.C. § 1 *et al*. It describes the motion as a "request that the Court compel arbitration and continue to stay these proceedings pending arbitration, as required by § 3 and § 4 of the Federal Arbitration Act ('the FAA')." D.I. 21 at 2.

### A.

Section 4 of the FAA "provides for United States district court enforcement of arbitration agreements." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009). The section reads in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure

6

> to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury . . . . If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4.[1]

Section 3 of the Act requires the district court to grant any application to "stay the trial of the action" "[i]f any suit or proceeding be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration" and the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3.

B.

A threshold—and, as it turns out, dispositive—question I must decide is whether I have jurisdiction to consider Burford's motion. FRC did not raise this

---

[1] For reasons not clear to me, § 4 does not say what the court is to do if, after a bench trial, it finds "that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder."

7

issue, but I "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

The FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden*, 556 U.S. at 59 (internal quotation marks, alterations, and citations omitted); *see also Badgerow v. Walters*, 596 U.S. 1, 4 (2022) ("A federal court may entertain an action brought under the FAA only if the action has an 'independent jurisdictional basis.'" (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). For that reason, an applicant seeking to compel an arbitration under § 4 of the Act must identify a grant of jurisdiction apart from the FAA. *See Badgerow*, 596 U.S. at 4. Under the express terms of § 4, this independent jurisdictional base must be "under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. As the Supreme Court held in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), "[s]ection 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute." *Id.* at 25 n.32.

8

1.

Burford has not identified, and I have not found, an independent jurisdictional basis in title 28 for a district court to enforce an agreement to arbitrate a § 1782 application. Burford argues that because "Congress has not expressly exempted § 1782 applications from arbitration, . . . such proceedings fall within the FAA." D.I. 21 at 12. And it insists that "[n]othing in § 1782 overrides the FAA or even suggests that Congress intended to preclude a litigant from agreeing to arbitration rather than a judicial forum for discovery requests in aid of foreign proceedings." D.I. 21 at 12. But the premise of these contentions—that jurisdiction exists under the FAA unless Congress says otherwise—cannot be reconciled with the Supreme Court's oft-repeated holding that the FAA does not grant federal courts jurisdiction. The relevant question for determining if I have jurisdiction to consider Burford's motion is neither whether Congress exempted § 1782 from the FAA nor whether § 1782 overrides the FAA. The question is instead: Is there a provision in title 28 that provides an independent jurisdictional basis for a district court to entertain a motion to enforce an agreement to arbitrate a § 1782 application? Burford has not pointed to, and I do not know of, any such provision.

Citing (and quoting selectively from) *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), Burford writes in its briefing that "the

9

Supreme Court has explained[] [that] the FAA's requirement that courts enforce arbitration agreements by their terms applies to 'any suit or proceeding,' 9 U.S.C. § 3—including those arising under federal statutes—'unless the FAA's mandate has been 'overridden by a contrary congressional command.''" D.I. 21 at 12 (quoting *Am. Express*, 570 U.S. at 233). This assertion is flawed in two respects.

First, the Court did not mention § 3 in *American Express*, and in any event, § 4—not § 3—authorizes parties to file and district courts to grant petitions to enforce arbitration agreements. As discussed above, by its express terms, § 4 applies to arbitration agreements for which enforcement is sought only if "save for such agreement, [the court] would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." Section 3 does not mention the enforcement of arbitration agreements, let alone authorize or require courts to enforce such agreements. Section 3 requires a district court, if asked, to "stay *the trial*" of "any suit or proceeding" filed (and for which jurisdiction exists) in that court if the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under . . . an [arbitration] agreement" and "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added). There being no such thing as a trial in a § 1782 action, § 3 has no bearing on the jurisdictional question before me.

10

Second, the Supreme Court neither held nor "explain[ed]" in *American Express* that "the FAA's requirement that courts enforce arbitration agreements by their terms applies to 'any suit or proceeding,' . . . 'unless the FAA's mandate has been 'overridden by a contrary congressional command.'" D.I. 21 at 12. Rather, the Court held that the FAA's requirement that courts enforce arbitration agreements by their terms "holds true *for claims that allege a violation of a federal statute*, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Am. Express*, 570 U.S. at 233 (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)) (emphasis added). Claims that allege a violation of a federal statute arise under federal law, and therefore, district courts have an independent jurisdictional basis to entertain such claims under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").[2] Thus, the sentence in *American Express* Burford points to is not in

---

[2] The claims the petitioners sought to arbitrate in *American Express* were federal antitrust claims, 570 U.S. at 231, and thus § 1337 of title 28 provided an additional independent jurisdictional basis for the district court to entertain the petition to enforce the claims under the FAA. *See* 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . ."). Federal courts also have jurisdiction over federal antitrust claims under 15 U.S.C. § 15. *See* 15 U.S.C. § 15 (providing that, with certain exceptions, "any person who shall be injured in his business or property by reason

11

tension with the "independent jurisdictional basis" doctrine imposed by *Vaden*, *Badgerow*, *Hall Street Associates*, and *Moses H. Cone*. The principle set forth in that sentence is simply that *if* a federal court has an independent jurisdictional basis to enforce an arbitration agreement under the FAA, the court must enforce the agreement by its terms unless Congress has mandated otherwise. In this case, the absence of an independent jurisdictional basis dooms Burford's motion.

2.

It might be argued—and FRC seems to have assumed—that § 1782 itself provides an independent jurisdictional basis for Burford's motion. Because Burford stated at the November 1 oral argument that it "would have the option to immediately appeal" my denial of its motion, D.I. 49 at 73:21–22, I think it prudent to explain why in my view § 1782 does not grant a district court an independent jurisdictional basis to entertain a motion to compel arbitration under the FAA.

---

of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent"). Section 15, however, cannot provide an independent jurisdictional basis for a petition to compel arbitration under the FAA because the express terms of § 4 of the FAA require that the independent jurisdictional basis for the "civil action . . . of the subject matter of a suit arising out of the controversy between the parties" be "under title 28."

12

As an initial matter, "[d]escribing a federal court's authority under § 1782 as 'jurisdictional' fits awkwardly with conventional Article III [i.e., "case or controversy"] terminology." *Republic of Ecuador v. Connor*, 708 F.3d 651, 655 (5th Cir. 2013). "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The Supreme Court has called § 1782 "a purely evidentiary proceeding," *United States v. Zubaydah*, 595 U.S. 195, 214 (2022), and at least two courts of appeals have described § 1782 as "simply a discovery mechanism." *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002); *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) (describing § 1782 as a "discovery mechanism"). As the Fifth Circuit noted in *Connor*:

> Normally, federal court jurisdiction reflects the courts' power to decide cases or controversies between contending parties. Significantly, a § 1782 application may or may not be adversarial. The federal court addresses an interlocutory discovery application that is ancillary to a non-domestic proceeding. Its § 1782 order "adjudicates" nothing else. Perhaps in recognition that Congress delegated a quasi-administrative role to the courts in § 1782, the Supreme Court [has] discussed the scope of a court's "authority"—not its "jurisdiction"—under the statute. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246, 124 S.Ct. 2466, 2472, 159 L.Ed.2d 355 (2004).

708 F.3d at 655.

But even if § 1782 could be said to grant district courts jurisdiction to entertain applications for discovery for foreign proceedings and disputes arising out of those applications, nothing in the text of § 1782 gives district courts jurisdiction over "a civil action . . . of the subject matter of a suit arising out of [a] controversy between [two or more] parties." 9 U.S.C. § 4. Section 1782 does not create a claim or cause of action to resolve controversies between parties. *Lazaridis v. U.S. Dep't of Just.*, 2009 WL 10715774, at *1 n.2 (D.D.C. Aug. 27, 2009) ("[Section 1782] does not create a private cause of action but rather is a mechanism for foreign or international tribunals or litigants appearing before them to obtain testimony or discovery via the 'district court of the district in which a person resides' for use in the foreign tribunal." (quoting 28 U.S.C. § 1782(a)); *In re Mongolia v. Itera Int'l Energy, LLC*, 2009 WL 10712603, at *11 (M.D. Fla. Nov. 10, 2009) ("[A] § 1782 Petition is a discovery device which does not impose liability or initiate a cause of action[.]"). Indeed, § 1782 does not create any legal right to a remedy, as "a district court's compliance with a § 1782 request is not mandatory." *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) (quoted approvingly in *Intel*, 542 U.S. at 264); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 133 (2d Cir. 2017) ("[E]ven if [§ 1782's] statutory requirements are met, a grant of discovery under [§] 1782 remains within the discretion of the district court."). Section 1782 is, in short, a mechanism for a

party to gain discovery for foreign proceedings, not an action to resolve existing controversies between parties. And because § 1782 does not grant a district court "jurisdiction over a suit on [an] underlying dispute," *Moses H. Cone*, 460 U.S. at 25 n.32, it does not provide a jurisdictional basis for me to entertain Burford's motion to compel arbitration.

\* \* \* \*

Having concluded that I lack jurisdiction to entertain a petition to compel the arbitration of a § 1782 application, I will deny Burford's motion. I turn, then, to FRC's application.

III.

As noted above, FRC seeks by its application an order giving it leave to serve document and deposition subpoenas on the three Burford Entities. D.I. 48. *See* D.I. 28-1; D.I. 28-2; D.I. 28-3; D.I. 28-4; D.I. 28-5; D.I. 28-6. The subject matters of the documents and testimony FRC seeks to obtain from Burford Germany include, among other things, (1) Burford Germany's corporate structure, owners, and investors; (2) Burford Germany's relationships, communications, and financial dealings with Burford Capital, GLS, Hausfeld, and Hausfeld's partners; and (3) the CPA. D.I. 28-1 at 13–17; D.I. 28-2 at 10–14. The subject matters of the documents and testimony FRC seeks to obtain from Burford Capital include, among other things, (1) Burford Capital's involvement and interests in Burford

15

Germany; (2) its relationship with GLS; (3) its relationship with Hausfeld; and (4) the negotiation of the CPA. D.I. 28-5 at 13–16; D.I. 28-6 at 10–14. The subject matters of the documents and testimony FRC seeks to obtain from GLS include, among other things, (1) GLS's corporate structure; (2) its interest in Burford Germany; (3) its relationship with Hausfeld and Hausfeld's partners; and (4) the CPA. D.I. 28-3 at 13–16; D.I. 28-4 at 10–13.

A district court has authority to grant an application under § 1782 when three statutory conditions are met: (1) the person from whom discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by an "interested person." 28 U.S.C. § 1782(a); *see also In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998). If the statutory conditions are satisfied, the decision to grant a § 1782 application lies within the district court's discretion. *Intel*, 542 U.S. at 264. The Court identified in *Intel* four factors relevant to that discretionary determination: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government to federal judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the request is unduly intrusive or burdensome. *Id.* at 264–65. "A court should

apply these factors in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Biomet Orthopaedics Switz. GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252).

All three statutory conditions are met in this case. First, each of the Burford Entities is a Delaware LLC and therefore a person that resides in this district. 1 U.S.C. § 1. Second, the discovery sought is for use in and relevant to a proceeding in a foreign tribunal—i.e., the Hausfeld Litigation in the Berlin Regional Court. Third, FRC, as a litigant in that proceeding, is an "interested person" under § 1782. *See Intel*, 542 U.S. at 256 ("[L]itigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." (second alteration in the original)).

Turning to the discretionary *Intel* factors, the first factor appears to favor granting the application because the Burford Entities are not parties to the Hausfeld Litigation and thus they may be "outside the . . . jurisdictional reach" of the Berlin Regional Court and the evidence FRC seeks may be "unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 244. The second factor also appears to favor granting FRC's application. I make that finding based on the determinations by numerous courts that the second *Intel* factor favors the granting of § 1782

17

applications for evidence to be used in German court proceedings. *See, e.g., Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010); *Heraeus Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011); *In re Cal. State Tchrs.' Ret. Sys.*, 2017 WL 1246349, at *3 (D.N.J. Apr. 3, 2017); *In re Application of Johannes Roessner to Take Discovery Pursuant to 28 U.S.C. 1782 in Aid of Foreign Litigants or Proc.*, 2021 WL 5042861, at *3 (S.D.N.Y. Oct. 29, 2021).

I make no finding with respect to the third *Intel* factor. FRC provided no declarations or citations to German law that would enable me to determine whether its application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies." *Intel*, 542 U.S. at 265. Lastly, with respect to the fourth *Intel* factor, I find that it favors granting the application because the discovery sought by FRC is not unduly intrusive and producing it would not be unduly burdensome.

Because FRC's application meets the statutory requirements of § 1782 and three of the four *Intel* factors weigh in favor of granting FRC's application, and mindful that I "should apply these factors in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our

courts,'" *In re Biomet*, 742 F. App'x at 696 (quoting *Intel*, 542 U.S. at 252), I will exercise my discretion and grant the application.[3]

IV.

For the reasons stated above, I will deny Burford's motion to compel arbitration and grant FRC's § 1782 application.

The Court will issue an Order consistent with this Memorandum Opinion.[4]

---

[3] Burford did not and was under no obligation to file an opposition to FRC's § 1782 application. Burford stated in its memorandum filed in support of its motion to compel that it "reserve[d] the right to substantively address the deficiencies in FRC's § 1782 application, and to seek further protections if any discovery is permitted, either before the arbitral tribunal or this Court." D.I. 21 at 11 n.3. Burford, of course, can move to quash any subpoena served on the Burford Entities by FRC and is free to address in any such motion alleged deficiencies in FRC's § 1782 application. *See, e.g.*, *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022) (addressing on appeal from denial of a motion to quash subpoenas issued pursuant to order granting § 1782 application whether district court had lawfully granted the application).

[4] I also have pending before me FRC's Motion for Leave to File Sur-Reply in Opposition to Respondents' Motion to Compel Arbitration and to Stay Further Proceedings Pending Arbitration. D.I. 39. As I saw no need to read and did not read the sur-reply FRC sought leave to file, I will deny the motion as moot.